PEPPER AND BATH V. B. K. SMITH AND WIFE.

(Case No. 914.)

1. HOMESTEAD — EQUITABLE TITLE.— The fact that parties establish a homestead on property which they hold by mere equitable title cannot subordinate the legal title to their equitable right; the homestead right is dependent on their title, and must stand or fall with it.

2. HOMESTEAD — NOTICE.— The purchaser under trust deed of the legal title to property, which, at the time the trust deed was executed, was occupied under equitable title by a third party as a homestead, acquires the superior title, unless the trustee and *cestui que trust* were chargeable, when the trust deed was executed, with notice of the superior equitable right of the occupant, as against the holder of the legal title.

3. HOMESTEAD — ESTOPPEL.— The wife, who, with her husband, joins in a trust deed with one in whom the legal title is vested, conveying property then occupied by her under equitable right as a homestead, cannot assert her equitable title as against the purchaser at trust sale, who had no notice of her equitable claim; by joining in the trust deed she admits in effect that the ownership of the property is in the holder of the legal title.

APPEAL from Gregg.  Tried below before the Hon. John C. Robertson.

Suit by Pepper & Bath for certain town lots, which they purchased at trust sale under a deed of trust made by Smith and wife, M. L. Fleishel and others. The legal title to the lots was in Fleishel, and at the time of the execution of the trust deed, which was made to secure the payment of notes made by the firm of Fleishel & Co., of which firm there was testimony showing that Mrs. Smith was a member.  When the trust deed was made, Smith and wife were living upon the lots, and appellant Bath was then informed by Fleishel in the presence of Smith that the lots belonged to Fleishel, and a similar declaration was made by Smith himself on the day the trust deed was made to Bath's attorney, who, after examining the record and finding that it placed the title in Fleishel, accepted the deed of trust.

The lots were claimed by Smith and wife as homestead, and there was testimony showing that they were purchased by Smith as agent for his wife, who took the deed in Fleishel's name because of his own insolvency, and Fleishel's notes were executed for the purchase money. The lots were paid for by B. K. Smith, but the testimony does not disclose whose money was used.

The improvements on the lots were made by Smith while Mrs. Smith and Fleishel were partners.

The cause was tried by the judge without the intervention of a jury, and judgment was rendered for the defendants for the lots as their homestead.

*Taylor & Morrison* and *C. L. Galloway,* for appellants.

I. Smith and wife, by taking a deed in the name of Fleishel, that is to say, by putting on record a title inconsistent with their own, are estopped from setting up title in themselves as against purchasers having no notice except of the deed on record. Wade on Notice, sec. 299; citing Scott *v.* Gallagher, 14 Serg. & R. 332.

II. Defendants below were estopped by the declaration of Smith to Adler, Goldman & Co.'s agent (Bath), and their attorney (Taylor), made on the day of the execution of the trust deed, said declaration having been acted on. And they were estopped by reason of having joined in a deed of trust to Adler, Goldman or A. S. Taylor, for their benefit, it being recited in said deed that the lots (herein sued for) Nos. 1 and 2, in block 38, were the property of M. L. Fleishel. See 3 Washburn, 3d ed., p. 74; 1 Greenl., sec. 207.

III. A *bona fide* purchaser for a valuable consideration without notice of a previous sale by his vendor will be protected.

IV. The possession of Smith and wife was no notice to Bath & Co., the legal title being on record in M. L. Fleishel. Philip Allston, Ex'r, *v.* W. H. Cundiff, Law Journal, vol. 3, p. 388.

V. A *bona fide* purchaser of the legal title is not affected by a secret trust of which he has not direct, express and positive notice, and possession by the tenant is not such notice, where the possession is by virtue of a title which might be had and which should be spread upon the record. Mullins *v.* Wimberly, 50 Tex., 465–6; Scott *v.* Gallagher, 14 S. & R. 333; Randall *v.* Silverthorn, 4 Barr, 173; Wood *v.* Farmere, 7 Watts, 382; Newhall *v.* Pierce, 5 Pick., 450.

VI. Possession is not notice where the tenant is knowingly in default in putting his title on record, and has voluntarily given assistance in misleading the purchaser. Mullins *v.* Wimberly, 50 Tex., 466.

*John M. Duncan* and *T. J. McCord,* for appellees.

I. A trust did result to the partnership in all the lots bought by Smith.

II. A homestead may be claimed in partnership property. Clements *v.* Lacy, 51 Tex., 162; Smith *v.* Chenault, 48 Tex., 458–63; Thompson on Homesteads, secs. 207, 212, 216.

III. An equitable title will support the homestead exemption, and if, prior to execution of deed of trust, Smith and wife could have enforced specific performance against Fleishel, their homestead claim will be valid. Mullins *v.* Wimberly, 50 Tex., 466; Smith *v.* Chenault, 48 Tex., 458–63; Thompson on Homesteads, secs. 170–72.

IV. The trust in this case does not arise by agreement.

V. If B. K. Smith and wife really had an equitable title to the lots, and were residing on them at the time of execution of the trust deed, the deed would not estop their homestead claim. Const. of Texas, art. XVI, sec. 50.

VI. A contract for the sale of lands where there is possession and improvements by the vendee, is not within the statute of frauds. Howe *v.* Rodgers, 32 Tex., 22; Brown *v.* Walker, 38 Tex., 109.

VII. The possession of Smith and wife was notice to

Bath & Co. of their title and homestead claims. Watkins *v.* Edwards, 23 Tex., 447; Mullins *v.* Wimberly, 50 Tex., 466. A purchaser of the legal title is affected by any equity or trust in third persons of which he has actual or constructive notice; and no exception has been yet recognized in this state, to the rule that purchasers must take notice of the title and claim of the tenant in possession. See cases last cited; Mainwarring *v.* Templeman, 51 Tex., 206–13.

VIII. Even if this is the rule, Mrs. Smith cannot be deprived of her homestead unless it be shown that she voluntarily misled appellants. Eckhardt *v.* Schlecht, 28 Tex., 134.

MOORE, CHIEF JUSTICE.— It is unnecessary to inquire into the origin or character of appellees' right to the lots in controversy in this case, for whether they are community property or separate estate of Mrs. Smith, the legal title to them, it cannot be denied, was at the institution of this suit in appellants. Unless, therefore, the evidence was sufficient to authorize the court to divest this legal title out of appellants, and vest it in appellees, or one or the other of them, if this had been asked, the judgment must be reversed.

The fact that parties may establish a homestead on property which they hold 'by mere equitable title in no way tends to subordinate the legal title to their mere equitable right. But their homestead right is dependent upon their title, and must stand or fall with it. It is therefore immaterial that appellants were chargeable with notice that appellees were occupying the lots as a homestead at the date of the deed of trust under which appellants acquired their title, unless the trustee and *cestui que trust* were chargeable at the date of said deed with notice of appellees' superior equitable right to the lots against Fleishel, in whom the legal title then stood. But

such an inference is not warranted by the facts. Both Fleishel, the grantor in the deed, and appellee, B. K. Smith, on inquiry being made of them, positively averred that the property belonged to Fleishel, which, under the authority of Ranney v. Miller, 51 Tex., 263, rendered inquiry of Mrs. Smith unnecessary; but if inquiry of her was necessary, she in effect made the same admission by her joinder in the deed of trust. Under these circumstances, to divest appellants of their legal title, acquired for a valuable consideration on the faith of these declarations and admissions, in favor of the parties making them, would work a gross and palpable fraud.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 14, 1880.]